IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEREMY FOSTER,

                  Plaintiff,

v.

COFFEY COUNTY, KANSAS, et al.,

                  Defendants.

Case No. 25-4047-DDC-RES

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Jeremy Foster has sued a series of defendants. He alleges that defendants violated his constitutional rights, abused court processes, and unlawfully billed him in violation of a bankruptcy stay. This case's docket has ballooned to a bewildering size of 173 entries in its less-than-six-month life. Twenty-two pending motions now sit before the court. This Order rules them all. Buckle in.

The court starts with some voluntary dismissals. Then, with the case whittled down at least somewhat, the court examines the remaining relevant facts in plaintiff's operative pleading.

---

[1] Plaintiff proceeds pro se. The court construes his filings liberally and "hold[s] [them] to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110. And our Circuit "'has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

I.      **Plaintiff's "Motions to Dismiss" (Doc. 93; Doc. 94; Doc. 95; Doc. 96; Doc. 116; Doc. 117)**

Plaintiff has filed six motions asking to dismiss certain defendants from this case. These motions ask to dismiss defendants Kelsey Winski, Doc. 93 at 1; Bethany Roberts, Doc. 94 at 1; City of Burlington, Kansas, and the Coffey County Sheriff's Department, Doc. 95 at 1; the Osage County Sheriff's Department, Doc. 96 at 1; Samantha Foster and Tonya Vignery, Doc. 116 at 1; and Janet Walsh, Doc. 117 at 1.[2] While plaintiff filed his motions under Fed. R. Civ. P. 41(a)(2), asking for a court order of dismissal, he doesn't need the court. Rule 41(a)(1)(A)(i) authorizes plaintiff to dismiss defendants without any leave from the court.

This rule instructs that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Fed. R. Civ. P. 41(a)(1)(A)(i). A plaintiff's notice of dismissal needn't invoke Rule 41(a)(1)(A)(i) explicitly. *See Janssen v. Harris*, 321 F.3d 998, 1000 (10th Cir. 2003) (finding pro se filing that gave "clear statement that [plaintiff] wanted his action to suffice" qualified as a notice of dismissal even without citing Rule 41). When this rule applies, the "dismissal 'is effective at the moment the notice is filed with the clerk,' and an order granting dismissal is 'superfluous, a nullity, and without procedural effect.'" *Lundahl v. Halabi*, 600 F. App'x 596, 603 (10th Cir. 2014) (quoting *Janssen*, 321 F.3d at 1000).[3]

---

[2]      One of plaintiff's motions also asked to dismiss the City of Waverly, Kansas. Doc. 93 at 1. Plaintiff and the City of Waverly subsequently filed a Stipulation of Dismissal (Doc. 99) under Rule 41(a)(1)(A)(ii), and the Clerk terminated this defendant.

[3]      As defendant City of Burlington notes, Doc. 111 at 1 n.1, our Circuit has held that Rule 41 isn't the proper vehicle to dismiss some—but not all—claims against a defendant. *See Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996) (explaining that Rule 41(a) doesn't apply "to dismissal of less than all claims in an action"). But this court has held that under our Circuit's precedent, Rule 41 permits "a plaintiff to stipulate to dismiss one defendant from a multi-defendant case[.]" *City of Scranton v. Orr Wyatt Streetscapes*, No. 18-4035-DDC-TJJ, 2018 WL 4222414, at *2 (D. Kan. July 16, 2018); *see also Van Leeuwen v. Bank of Am., N.A.*, 304 F.R.D. 691, 697 (D. Utah 2015)

Plaintiff's motions make clear that he wants to release certain defendants from this case. The court thus liberally construes his Motions to Dismiss (Doc. 93; Doc. 94; Doc. 95; Doc. 96; Doc. 116; Doc. 117) as notices of voluntary dismissal under Rule 41(a)(1)(A)(i). *See Janssen*, 321 F.3d at 1000 (construing pro se plaintiff's letter requesting dismissal as a Notice of Dismissal). The court thus directs the Clerk to treat plaintiff's Motions to Dismiss (Doc. 93; Doc. 94; Doc. 95; Doc. 96; Doc. 116; Doc. 117) as Notices of Dismissal. Plaintiff's filings thus dismiss the following defendants without prejudice: Kelsey Winski, Bethany Roberts, City of Burlington, Coffey County Sheriff's Department, Osage County Sheriff's Department, Samantha Foster, Tonya Vignery, and Janet Walsh.

Taking inventory, these defendants remain: Coffey County, Osage County, Fourth Judicial District Court of Kansas, Judge Kara Reynolds,[4] Barber Emerson, L.C.,[5] Ty Wheeler, and Brian Henderson.

---

("*Gobbo* would control if Plaintiff were attempting to dismiss fewer than all claims against any single defendant."). So plaintiff's (implicit) use of Rule 41(a)(1)(A)(i) here is appropriate.

[4]    The Second Amended Complaint names "Judge Karen Reynolds" as a defendant in this action. Doc. 77 at 1 (Second Am. Compl. ¶ 7). Evidently, Judge Reynolds's first name is Kara, not Karen. *See* Doc. 108 at 1. When the court suspects that a pro se plaintiff has named the wrong defendant, the court "may look at the body of" a pro se litigant's "complaint to determine who the intended and proper defendants are." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1243–44 (10th Cir. 2007). The court liberally construes the Second Amended Complaint to assert claims against Judge Kara Reynolds. And the court directs the Clerk to update the docket to list "Kara Reynolds" instead of "Karen Reynolds."

[5]    The Second Amended Complaint names "Barbara Emerson" as a defendant in this action. Doc. 77 at 2 (Second Am. Compl. ¶ 8). It alleges that "Barbara Emerson is an attorney and managing partner of Barber Emerson, L.C." *Id.* The law firm Barber Emerson, L.C. filed a Motion to Dismiss (Doc. 113) and attached an affidavit from one of its attorneys. It attests that there "is no attorney by the name of 'Barbara Emerson' associated with Barber Emerson, L.C." Doc. 114-2 at 1 (Karlin Aff. ¶ 2). Barber Emerson, L.C. also argues that the court should dismiss any claims against "Barbara Emerson" because that's someone who just doesn't exist. Doc. 114 at 1. The court declines and instead liberally construes plaintiff's pleading to allege claims against Barber Emerson, L.C. *See Trackwell*, 472 F.3d at 1243–44. The court directs the Clerk to update the docket to list "Barber Emerson, L.C." instead of "Barbara Emerson."

## II.      Background

Excising facts involving now-dismissed defendants, the Second Amended Complaint alleges the following against the remaining defendants.

Defendants Ty Wheeler and Brian Henderson improperly served protection-order petitions on plaintiff by using plaintiff's incorrect address. Doc. 77 at 3 (Second Am. Compl. ¶ 22). Plaintiff argues that this improper service violated both state and federal law. *Id.* (Second Am. Compl. ¶ 23).

Plaintiff alleges that defendant Judge Reynolds has engaged in improper judicial conduct. Specifically, he alleges, Judge Reynolds unlawfully extended a protection order in July 2023. *Id.* (Second Am. Compl. ¶ 24). This action was unlawful, plaintiff alleges, because plaintiff hadn't received service and thus didn't appear at the protection-order hearing. *Id.* Judge Reynolds also signed an ex parte protection order based solely on unverified allegations from Rachel Price. *Id.* (Second Am. Compl. ¶ 25). When plaintiff sought a protection order against Rachel Price, Judge Reynolds denied the petition for insufficient evidence, but the court's technology systems didn't allow plaintiff to upload exhibits. *Id.* (Second Am. Compl. ¶ 26).

Against defendant Janet Walsh, plaintiff alleges discovery abuse and judicial collusion. *Id.* at 3–4 (Second Am. Compl. ¶ 30). Walsh allegedly has obstructed discovery in state-court litigation. *Id.* And Walsh serves on the committee that selected Judge Reynolds to serve as a judge and defendant Tonya Vignery—whom plaintiff voluntarily dismissed—as the Osage County Attorney. *Id.* at 4 (Second Am. Compl. ¶ 32). Plaintiff asserts that these connections undermine his right to a fair trial. *Id.*

Finally, plaintiff alleges that the defendant law firm Barber Emerson billed plaintiff during an active federal bankruptcy stay. *Id.* (Second Am. Compl. ¶ 33). Plaintiff asserts that this bill violated 11 U.S.C. § 362.

Based on these allegations, plaintiff asserts these claims against the remaining defendants:

- a 14th Amendment § 1983 due process claim against Judge Reynolds, Barber Emerson, "and others";

- an abuse-of-process and fraud-on-the-court claim against Judge Reynolds; and

- a violation of a bankruptcy stay claim under 11 U.S.C. § 362 against Barber Emerson.

*Id.* at 5 (Second Am. Compl. § IV). The Fourth Judicial District Court of Kansas and Osage County remain as defendants in this case, but plaintiff's Second Amended Complaint doesn't assert any facts or claims involving these two defendants.[6]

From here, this Order's analysis unfolds in this order: the court starts with plaintiff's motions for preliminary relief and for entries of default and default judgment. Then, the court takes up defendants' Motions to Dismiss. Next, the court takes up plaintiff's other filings—ones asking for leave to file surreplies and giving notice to the court of alleged constitutional violations in Kansas state court. Last, the court addresses the remaining claims and orders plaintiff to show cause why the court shouldn't dismiss those claims.

## III.    Motion for Preliminary Injunction (Doc. 11)

The court denies plaintiff's Motion for Preliminary Injunction (Doc. 11). Plaintiff has filed a Second Amended Complaint (Doc. 77), which supersedes his Amended Complaint (Doc. 4). *See Predator Int'l*, 793 F.3d at 1180–81. Because plaintiff filed his request for a preliminary injunction under his Amended Complaint, the filing of his Second Amended Complaint moots

---

[6]    The court doesn't consider allegations set forth in plaintiff's original Complaint (Doc. 1) or his Amended Complaint (Doc. 4) because his Second Amended Complaint (Doc. 77) supersedes those filings. *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180–81 (10th Cir. 2015) ("[A]n amended pleading supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." (quotation cleaned up)); *Callahan v. Poppell*, 471 F.3d 1155, 1161 (10th Cir. 2006) (declining to consider claims omitted from pro se litigant's amended pleading); *Martinez v. Trani*, 750 F. App'x 759, 760 (10th Cir. 2018) (same).

his injunction motion. *See Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1261 n.5 (10th Cir. 2024) (explaining that filing of an amended complaint mooted "a motion for a preliminary injunction under the [plaintiffs'] first complaint"). And the court denies the injunction motion on that basis.

Regardless, plaintiff's briefing on all four preliminary-injunction elements is perfunctory. *See* Doc. 11 at 1. So, even if his injunction motion could survive after his Second Amended Complaint, the court deems plaintiff's preliminary-injunction arguments waived. *See United States v. Walker*, 918 F.3d 1134, 1151 (10th Cir. 2019) (explaining that "arguments may be deemed waived when they are advanced . . . only in a perfunctory manner" (quotation cleaned up)). The court thus alternatively denies plaintiff's Motion for Preliminary Injunction (Doc. 11) because plaintiff has failed to "make a clear and unequivocal showing that [he] is entitled to" the "extraordinary remedy" of a preliminary injunction. *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (quotation cleaned up).

## IV.    Motions for Default Judgment (Doc. 44; Doc. 51; Doc. 52; Doc. 55)

The court denies plaintiff's Motions for Default Judgment (Doc. 44; Doc. 51; Doc. 52; Doc. 55). Even setting aside the issue that plaintiff didn't secure an entry of default before filing these motions, *see* Fed. R. Civ. P. 55, all the default judgment motions are moot. That's so because plaintiff has filed a Second Amended Complaint (Doc. 77), which supersedes his Amended Complaint (Doc. 4). *See Predator Int'l*, 793 F.3d at 1180–81. So, plaintiff's Second Amended Complaint mooted his requests for default judgment based on his Amended Complaint. *See, e.g.*, *Marotta v. Cortez*, No. 08–cv–02421–CMA–CBS, 2008 WL 5044496, at *1 (D. Colo. Nov. 20, 2008) (denying motion for default "on the grounds that it was rendered null by the filing of [plaintiff's] Amended Complaint"); *Pathways Mgmt. Servs., LLC v. Northstar Hosp.*, No. 24-1055-EFM-ADM, 2024 WL 4903809, at *2 (D. Kan. Nov. 27, 2024)

(compiling cases and noting that our court and other courts have "held that a clerk's entry of default based on an original complaint must be set aside when an amended complaint is filed"); *see also Warren v. Green Tree Servicing, LLC*, 663 F. App'x 703, 710 (10th Cir. 2016) (finding no abuse of discretion where district court set aside clerk's entry of default after plaintiff filed amended pleading). The court thus denies plaintiff's Motions for Default Judgment (Doc. 44; Doc. 51; Doc. 52; Doc. 55). The court also finds plaintiff's Applications for Clerks Entry of Default (Doc. 43; Doc. 54; Doc. 73) based on plaintiff's Amended Complaint moot for the same reason.

## V.    Remaining Applications for Entry of Default (Doc. 119; Doc. 120)

Since filing his Second Amended Complaint, plaintiff has filed two Applications for Entry of Default (Doc. 119; Doc. 120). These filings seek entry of default against defendants Brian Henderson, Doc. 119 at 1, and Ty Wheeler, Doc. 120 at 1. And plaintiff attached documents to each of his filings moving for default judgment. Doc. 119-2 at 1; Doc. 120-2 at 1. Unlike plaintiff's other attempts to secure default, these motions aren't moot because plaintiff filed them after he had filed his Second Amended Complaint. But plaintiff isn't entitled to entries of default or default judgment, either.[7]

Proper service is a prerequisite to securing an entry of default. *United States v. Tarkowski*, No. 23-1210-EFM-TJJ, 2024 WL 1299388, at *1 (D. Kan. Mar. 27, 2024) (citing *Petersen v. Carbon County*, 156 F.3d 1244, 1998 WL 458555, at *4 (10th Cir. 1998)). Here,

---

[7] Plaintiff's attachments incorrectly assert that "the Clerk entered Default on September 2, 2025." Doc. 119-2 at 1; Doc. 120-2 at 1. As the docket reflects, the Clerk hasn't entered default against any defendant. Plaintiff's assertion to the contrary is just wrong. The court reminds plaintiff that he—like all litigants—must abide Rule 11 of the Federal Rules of Civil Procedure. Submitting plainly false information violates this rule. The court cautions plaintiff that he may face sanctions if he submits false information to the court in the future.

plaintiff failed to serve Ty Wheeler or Brian Henderson properly, so he's not entitled to a default. *See Towers v. Abbott*, No. 24-4024-JAR-ADM, 2025 WL 522467, at *3 n.2 (D. Kan. Feb. 18, 2025) ("[B]ecause these defendants were not properly served with summons and the amended complaint, entry of default is not appropriate.").

"Federal Rule of Civil Procedure 4(c) governs service of the summons and complaint." *Id.* at *1. That rule specifies that "a party" may not "serve a summons and complaint." Fed. R. Civ. P. 4(c)(2). "Even when service is effected by the use of the mail, only a nonparty can place the summons and complaint in the mail." *Constien v. United States*, 628 F.3d 1207, 1213 (10th Cir. 2010); *see also Towers*, 2025 WL 522467, at *1 (compiling cases).[8] But the Proof of Service forms plaintiff submitted reflect that he himself mailed the summons and pleading by certified mail. Doc. 131 at 1; Doc. 132 at 1. Plaintiff's purported service thus failed to comply with Rule 4(c) and is defective. Ty Wheeler and Brian Henderson weren't served properly.

Plaintiff's attempted service was defective for a second reason. A party may serve a summons and complaint by "following state law for serving a summons . . . in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1). Plaintiff evidently sought to utilize this provision because he didn't comply with the other mechanisms for service outlined in the Rules. *See* Fed. R. Civ. P. 4(e)(2). But plaintiff's attempt at service didn't comply with Kansas law. For both Mr. Wheeler and Mr. Henderson, plaintiff attempted to mail the summons and pleading to the office of Kansas Legal Services in Emporia, Kansas. Doc. 131 at 3; Doc. 132 at 3. But Kansas law doesn't allow service on an individual's business

---

[8]        As our court has explained, even if plaintiff was trying to serve by following Kansas state law, he still violated Rule 4(c). That's because "even though Kansas law permits the *method* of service of process used by [plaintiff], Federal Rule of Civil Procedure 4(c)(2) governs the issue of *who* may effect service, and [plaintiff], as a party, is ineligible." *Towers*, 2025 WL 522467, at *2 (emphases in original) (compiling cases).

address unless "the sheriff, party or party's attorney files a return of service stating that the return receipt delivery to the individual at the individual's dwelling or usual place of abode was refused or unclaimed and that a business address is known for the individual." Kan. Stat. Ann. § 60-304(a).[9] Plaintiff submitted no such filing. So, he failed to comply with Kansas service law by mailing documents to Kansas Legal Services. Plaintiff's attempted service thus violated Rule 4 in multiple ways.

Because plaintiff failed to serve Mr. Wheeler and Mr. Henderson properly, he isn't entitled to entry of default against these defendants. And without an entry of default, plaintiff isn't entitled to default judgment, either. *See Pitts v. Matevousian*, No. 20-CV-02691-RM-KLM, 2021 WL 22335, at *1 (D. Colo. Jan. 4, 2021) ("As default has not been entered, default judgment may not be granted.").

The court considers defendants' Motions to Dismiss, next.

## VI.    Moot Motions to Dismiss (Doc. 79; Doc. 84; Doc. 91; Doc. 115)

The court starts by denying four Motions to Dismiss—all of which are now moot.

*First*, the court denies defendant City of Burlington's Motion to Dismiss (Doc. 79). As discussed above, plaintiff has dismissed this defendant voluntarily from this action. Doc. 95 at 1. Its Motion to Dismiss (Doc. 79) is thus moot. And the court denies it on that basis.

*Second*, the court denies Judge Taylor Wine's Motion to Dismiss (Doc. 84). As Judge Wine recognizes, *see* Doc. 85 at 1, he isn't listed as a defendant in the Second Amended

---

[9]    Mr. Wheeler and Mr. Henderson both submitted declarations, where they attested that they do not have a dwelling or usual place of abode located at the address where plaintiff mailed the summonses and pleadings. Doc. 149-1 at 1 (Henderson Decl. ¶ 1); Doc. 149-2 at 1 (Wheeler Decl. ¶ 1).

Complaint.  *See generally* Doc. 77.  The court thus denies his Motion to Dismiss (Doc. 84) because he is no longer a defendant in this case.[10]

*Third*, the court denies defendants Bethany Roberts and Janet Walsh's Motion to Dismiss (Doc. 91).  Plaintiff already has dismissed these defendants voluntarily from this action.  Doc. 94 at 1; Doc. 117 at 1.  So, their Motion to Dismiss (Doc. 91) is moot, and the court denies it.

*Fourth*, the court denies defendants Samantha Foster and Tonya Vignery's Motion to Dismiss (Doc. 115).  Once again, plaintiff has dismissed these defendants voluntarily.  Doc. 116 at 1.  And so, their Motion to Dismiss (Doc. 115) is moot.  The court denies it on that basis.

## VII.     Remaining Motions to Dismiss (Doc. 86; Doc. 90; Doc. 108; Doc. 113)

Four Motions to Dismiss remain—ones filed by the Fourth Judicial District of Kansas, Judge Reynolds, Osage County and Coffey County, and Barber Emerson.  The court explains the governing standard for these motions before turning to the motions themselves.

### A.  Motion-to-Dismiss Standard

#### 1.  12(b)(1)

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, [they] must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  The party invoking federal jurisdiction—here, plaintiff—bears the burden to prove it exists.  *Kokkonen v.*

---

[10]       Judge Wine asks the court to dismiss plaintiff's claim against him with prejudice, but our Circuit has urged courts to dismiss pro se claims without prejudice.  *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

Rule 12(b)(1) motions take one of two forms: a facial attack or a factual attack. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "A facial attack asserts that the allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction. By contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends." *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F. Supp. 3d 944, 951 (D.N.M. 2022) (citation and internal quotation marks omitted).

A factual attack allows the court to "reference . . . evidence outside the pleadings" including "affidavits, other documents, and [even conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation and internal quotation marks omitted). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). Instead, "when considering a Rule 12(b)(1) motion to dismiss, the court may weigh the evidence and make factual findings." *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063 (10th Cir. 2012).

"If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994). So, when facing a factual attack, a plaintiff must "present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999); *see*

*also Sapp v. F.D.I.C.*, 876 F. Supp. 249, 251 (D. Kan. 1995) ("The allegations contained in the complaint are initially accepted as true, but if challenged the plaintiff has the duty to support the allegations with competent proof.").  Our Circuit has analogized plaintiffs' Rule 12(b)(1) burden to the nonmovant's burden under Fed. R. Civ. P. 56(e).  *Hafter D.O.*, 190 F.3d at 1160 n.5 ("Whether we consider [defendant's] motion as a motion to dismiss under Rule 12(b)(1) or a motion for summary judgment, [plaintiffs'] burden remains essentially the same—they must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence.").

### 2.   12(b)(6)

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

12

And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands

more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.*

(quoting *Twombly*, 550 U.S. at 555).

### B.  Fourth Judicial District (Doc. 86)

The Fourth Judicial District has filed a Motion to Dismiss (Doc. 86).  It asserts Eleventh

Amendment immunity and argues that the court lacks jurisdiction under *Rooker-Feldman*,

*Younger*, and the domestic-relations exception.  The court agrees.  Eleventh Amendment

immunity shields the Fourth Judicial District and deprives the court of subject matter jurisdiction

to hear claims against it.  The court thus dismisses plaintiff's claims against this defendant

without prejudice.

"The Eleventh Amendment bars suits in federal court against a nonconsenting state

brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212

(10th Cir. 2019).  "This immunity extends to arms of the state[.]" *Id.*  Where properly raised,

Eleventh Amendment immunity deprives the court of subject matter jurisdiction.  *Id.* ("Once

effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal

subject matter jurisdiction." (quotation cleaned up)).  There "'are three exceptions to the

Eleventh Amendment's guarantee of sovereign immunity to states.'" *Frank v. Lee*, 84 F.4th

1119, 1130–31 (10th Cir. 2023) (quoting *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d

1164, 1168 (10th Cir. 2015)).

> "First, a state may consent to suit in federal court.  Second, Congress may abrogate
> a state's sovereign immunity by appropriate legislation when it acts under Section
> 5 of the Fourteenth Amendment.  Finally, under *Ex parte Young*, a plaintiff may
> bring suit against individual state officers acting in their official capacities if the
> complaint alleges an ongoing violation of federal law and the plaintiff seeks
> prospective relief."

*Id.* (quoting *Levy*, 789 F.3d at 1169).

Here, the Fourth Judicial District is an arm of the state of Kansas. *See Hamilton v. Wyandotte Cnty. Dist. Ct.*, No. 25-3098-JWL, 2025 WL 1591982, at *4 (D. Kan. June 5, 2025) ("Kansas state law clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals."); *see also* Kan. Const. art. 3, § 1 ("The judicial power of this state shall be vested exclusively in one court of justice, which shall be divided into one supreme court, district courts, and such other courts as provided by law[.]").  The court thus lacks jurisdiction over plaintiff's claims against the Fourth Judicial District unless one of the three exceptions to Eleventh Amendment immunity applies.  None does.

Plaintiff hasn't alleged that Kansas consented to this suit.  Congress didn't abrogate Kansas's immunity when it enacted § 1983.  *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("§ 1983 does not abrogate a state's sovereign immunity[.]").  And *Ex parte Young* doesn't apply because plaintiff has sued the Fourth Judicial District—not a state official.  *See Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012) ("[F]or the *Ex parte Young* exception to apply, plaintiffs must show that they are:  (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief.").  Also, plaintiff's operative pleading doesn't allege "an ongoing violation of federal law[.]"  *Id.*[11]  So none of the three exceptions to Eleventh

---

[11]     Recall that the Second Amended Complaint alleges that Judge Reynolds "unlawfully extended a protection order . . . despite lack of service and Plaintiff's absence."  Doc. 77 at 3 (Second Am. Compl. ¶ 24).  Plaintiff's pleading thus complains about *past* decisions.  It doesn't allege an ongoing violation of federal law.  So, even if the court construed the complaint as asserting an official-capacity claim against Judge Reynolds, such a claim likewise wouldn't satisfy the *Ex parte Young* requirements.  And even if plaintiff's pleading complained of ongoing federal violations, the *Rooker-Feldman* doctrine—which the court discusses below—still would deprive the court of jurisdiction to hear plaintiff's claims against the Fourth Judicial District.

Amendment immunity applies here.  The Fourth Judicial District is immune from this suit.  The court thus lacks jurisdiction over any claims against this defendant.  And the court dismisses any claims against the Fourth Judicial District without prejudice.[12]

### C.  Judge Reynolds

Judge Reynolds has also filed a Motion to Dismiss (Doc. 108).  She argues that three doctrines—*Younger* abstention, *Rooker-Feldman*, and the domestic-relations exception—preclude the court from exercising jurisdiction.  Alternatively, she argues, judicial immunity protects her.  The court takes up the jurisdictional arguments first, as it must, and concludes that the *Rooker-Feldman* doctrine bars the court from exercising jurisdiction over plaintiff's claims against Judge Reynolds.

### 1.  *Younger* Abstention

*Younger* doesn't require the court to abstain here.  "A federal court must abstain from deciding a case otherwise within the scope of its jurisdiction in certain instances in which the prospect of undue interference with state proceedings counsels against federal relief."  *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 522 (10th Cir. 2023) (quotation cleaned up).  A case with state-court ties triggers *Younger* abstention "*only when* the state proceeding falls into one of the following categories:  '(1) state criminal prosecutions, (2) civil enforcement proceedings that take on a quasi-criminal shape, and (3) civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'"  *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th 1307, 1317 (10th Cir. 2024)

---

[12]    "A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006).

(quotation cleaned up) (emphasis in original) (quoting *Graff*, 65 F.4th at 522). These three "exceptional" categories "'define *Younger*'s scope.'" *Id.* (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). "Only 'exceptional' circumstances merit *Younger* abstention . . . and in the ordinary case, the default rule applies: that 'the pendency of an action in a state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 670 (10th Cir. 2020) (quotation cleaned up) (quoting *Sprint*, 571 U.S. at 73).

The operative pleading here references just one proceeding—one where a Kansas judge imposed a protection order against plaintiff. *See* Doc. 77 at 3 (Second Am. Compl. ¶ 24) ("On July 10, 2023, Judge Karen Reynolds unlawfully extended a protection order in CF-2023-DM-00046 despite lack of service and Plaintiff's absence."); *see also id.* (Second Am. Compl. ¶ 26) (complaining that Judge Reynolds denied plaintiff's request for a protection order).[13] This proceeding doesn't fall into any of the three categories requiring *Younger* abstention.[14]

---

[13]     Judge Reynolds's brief suggests that plaintiff's reference to CF-2023-DM-00046 is a typographical error and that plaintiff intended to describe CF-2023-DM-00045—plaintiff's divorce-and-custody case. Doc. 109 at 3 n.2. The court doesn't come to the same conclusion. Three things suggest that plaintiff didn't intend to refer to the divorce-and-custody case. *First*, the Second Amended Complaint alleges that Judge Reynolds took action on July 10, 2023. But the docket for the divorce-and-custody case, CF-2023-DM-00045, contains no entry on that date. *See In re Marriage of Rachel Foster v. Jeremy Foster*, No. CF-2023-DM-000045 (Coffey Cnty. Dist. Ct. June 6, 2023). *Second*, the docket doesn't reflect that Judge Reynolds was involved at all in the divorce-and-custody case. *See id.* And *third*, a publication from the Kansas Judicial Branch says that protection-from-abuse and protection-from-stalking cases aren't visible on the public portal. *See* Kansas Judicial Branch, *Public Portal Smart Search*, (Sept. 10, 2025), https://perma.cc/QT8U-CGQV. Sure enough, the court's review of Kansas state records turned up no protection-order proceeding, CF-2023-DM-00046, even though it did lead to the divorce proceeding. Putting all of this together, the court concludes that plaintiff didn't intend to refer to the divorce proceeding.

[14]     It's not clear from plaintiff's cursory pleading whether the order entered against him was a protection-from-stalking order, *see* Kan. Stat. Ann. § 60-31a06, or a protection-from-abuse order, *see id.* § 60-3107. This distinction wouldn't alter any of the court's conclusions.

It doesn't fall into the first category. It isn't a criminal proceeding. So the first category is out.

Likewise, the proceeding doesn't fall under the second category. A protection-order proceeding doesn't qualify as a quasi-criminal enforcement action. That's so because it wasn't "initiated to sanction" plaintiff "for some wrongful act." *Sprint*, 571 U.S. at 79; *see also Rynearson v. Ferguson*, 903 F.3d 920, 926 (9th Cir. 2018) (explaining that under Washington's stalking protection statute, "the primary purpose of the [protection from stalking] order is to protect the petitioner, not punish the respondent"). Abuse-from-stalking proceedings in Kansas don't involve investigations or "the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79–80; *see generally* Kan. Stat. Ann. § 60-31a06 (describing procedures for securing protection-from-stalking order); Kan. Stat. Ann. § 60-3107 (describing procedures for securing protection-from-abuse order). Nor were the proceedings "initiated by the state in its sovereign capacity." *Sprint*, 571 U.S. at 80 (quotation cleaned up). So, stalking-order proceedings don't qualify for *Younger*'s second category. *See id.* (concluding action wasn't quasi-criminal where no "state authority conducted an investigation into [plaintiff's] activities, and no state actor lodged a formal complaint against [plaintiff]"); *see also Rynearson*, 903 F.3d at 926 (concluding that state "stalking protection proceedings do not reflect any of the characteristics described in *Sprint*" and that such proceedings "are not quasi-enforcement actions for *Younger* purposes").

That conclusion leaves the third *Younger* category—"'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial function.'" *Travelers Cas. Ins.*, 98 F.4th at 1317 (quoting *Graff*, 65 F.4th at 522). Protection-from-stalking proceedings don't fall into this category, either. This category "is geared to ensuring that federal courts do not interfere in the procedures by which states administer their

judicial system and ensure compliance with their judgments." *Rynearson*, 903 F.3d at 926. The two times the Supreme Court has applied this category have involved a civil contempt order and a requirement for posting bond pending appeal. *See Sprint*, 571 U.S. at 79 (first citing *Juidice v. Vail*, 430 U.S. 327, 336 n.12 (1977); and then citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987)); *see also Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *4 (10th Cir. May 19, 2025) (describing these examples). Protection-from-stalking "proceedings do not 'implicate the state's interest in enforcing the orders and judgments of its courts.'" *Covington*, 2025 WL 1448661, at *5 (quotation cleaned up) (quoting *Sprint*, 571 U.S. at 72–73); *see also Rynearson*, 903 F.3d at 927 (concluding that plaintiff's challenge to Washington's protection-from-stalking statutory scheme "did not involve Washington's interest in enforcing the orders and judgments of its courts" such that third *Younger* category didn't apply). And so, they don't satisfy the third *Younger* category.[15]

Because none of the three *Younger* categories is present here, the court needn't abstain. *See Travelers Cas. Ins.*, 98 F.4th at 1317 ("The *sine qua non* of *Younger* abstention is the presence of an 'exceptional' state court proceeding, and *Younger* extends no further." (quotation cleaned up)). The court takes up Judge Reynolds's *Rooker-Feldman* arguments, next.

---

[15]     Judge Reynolds's brief argues that divorce-and-custody proceedings fall into the third category. Doc. 109 at 11. A recent, unpublished case from our Circuit casts doubt on this assertion. *See Covington*, 2025 WL 1448661, at *5 & n.10 (explaining that the Tenth Circuit "has applied *Younger* to state domestic relations proceedings in unpublished post-*Sprint* decisions" but suggesting that those decisions may not remain good law because "none expressly addressed the *Sprint* categories"). Because the Second Amended Complaint references only a protection-order proceeding—not a divorce-or-custody case—the court needn't resolve that issue.

2. *Rooker-Feldman*

The court reaches a different conclusion about Judge Reynolds's arguments on the *Rooker-Feldman* doctrine. Judge Reynolds asserts that this doctrine bars the court from exercising its jurisdiction. This theory presents a factual attack on the court's jurisdiction.[16]

"*Rooker-Feldman* prevents federal courts . . . from exercising jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments before the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments.'" *Graff*, 65 F.4th at 514 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). *Rooker-Feldman* prevents a federal court from exercising its jurisdiction when a case satisfies four requirements: "'(1) the plaintiff lost in state court, (2) the state court judgment caused the plaintiff's injuries, (3) the state court rendered judgment before the plaintiff filed the federal claim, and (4) the plaintiff is asking the district court to review and reject the state court judgment.'" *Id.* (quoting *Bruce v. City and County of Denver*, 57 F.4th 738, 746 (10th Cir. 2023)). This case satisfies all four elements required for *Rooker-Feldman* abstention.

*First*, plaintiff "lost" in state court when Judge Reynolds "extended a protection order" against him and refused to enter a protective order for him. Doc. 77 at 3 (Second Am. Compl. ¶¶ 24, 26).

---

[16]    Judge Reynolds doesn't characterize her *Rooker-Feldman* argument as a facial attack or a factual attack. Doc. 109 at 12–13. The court construes it as a factual attack. Plaintiff's Complaint seems to assert that Judge Reynolds's ruling in a proceeding has caused him injury, and Judge Reynolds has pointed out that the proceeding is over. And so, this is not a facial-challenge situation in which all the necessary facts appear in the Complaint. Instead, a factual dispute about the finality of the proceedings places this case in factual-attack territory.

*Second*, plaintiff apparently alleges that he suffered injury from this entry. *See id.* (Second Am. Compl. ¶ 26) (alleging Judge Reynolds's actions constituted "procedural unfairness").

*Third*, the state court entered judgment before plaintiff filed his claims in this case on June 24, 2025. *See id.* (Second Am. Compl. ¶ 24) (alleging that Judge Reynolds extended the protection order on July 10, 2023). Judge Reynolds correctly asserts that the state-court proceedings are over. Doc. 109 at 12. In Kansas, protection-from-abuse orders are immediately appealable to the Kansas Court of Appeals. *See J.B.B. v. J.L.B.*, 495 P.3d 1036, 1040 (Kan. Ct. App. 2021) (explaining that litigant needed to file appeal in the Kansas Court of Appeals for review of magistrate judge's entry of protection order); *see id.* at 1038 (describing district court's entry of a protection-from-abuse order as a "judgment"). Plaintiff doesn't allege that he appealed entry of the protection order.[17] Instead, the court concludes by a preponderance of the

---

[17] Mindful of plaintiff's pro se status, the court conducted its own review of Kansas appellate records. That review didn't reveal that plaintiff had appealed the state-court protection order. But Kansas appellate records don't show protection-from-stalking and protection-from-abuse cases. *See* Kansas Judicial Branch, *Appellate Public Portal Smart Search* (Mar. 26, 2025), https://perma.cc/8GF2-63FB. The court also reviewed dockets for the Kansas Court of Appeals, which don't show plaintiff as a litigant in any upcoming case for the next few months. *See* Kansas Judicial Branch, *Court of Appeals Dockets*, https://kscourts.gov/About-the-Courts/Court-of-Appeals/Dockets (last visited Sept. 25, 2025) (showing upcoming dockets through November 2025). The court also reviewed all Kansas Court of Appeals dockets dating back to the beginning of 2024. *See* Kansas Judicial Branch, *Recent Court of Appeals Dockets*, https://kscourts.gov/About-the-Courts/Court-of-Appeals/Dockets/Recent-Court-of-Appeals-Dockets (last visited Sept. 25, 2025). None of these sources showed plaintiff as a litigant either. Nor has the Kansas Court of Appeals already issued an order where plaintiff was a litigant. Put this all together. Over two years have passed since the allegedly unlawful protection order entered. Plaintiff doesn't allege that he appealed that order. No publicly available information reflects that plaintiff has appealed.

Plaintiff submitted another filing, however, that complicates this inquiry. *See* Doc. 170. In it, plaintiff asserts that—in fact—he has appealed the protection-from-stalking case. *Id.* at 1 (discussing "missing state-court transcripts relevant to [plaintiff's] appeals in . . . CF-2023-DM-000046"). The court strikes this filing and declines to consider it. As Magistrate Judge Rachel E. Schwartz recently noted, plaintiff "has been told repeatedly not to file these types of documents"—ones listed as "notices" that don't ask for any relief. Doc. 169 at 5 n.3. Plaintiff ignored Magistrate Judge Schwartz's warning at his own peril. But even if the court were to consider this improper filing, it wouldn't change the result. Circuit precedent requires plaintiffs facing factual-subject-matter-jurisdiction challenges to "present

evidence that plaintiff didn't appeal and that the relevant state-court proceedings were final when plaintiff filed this action. Plaintiff thus hasn't carried his burden to show that *Rooker-Feldman* doesn't bar the court's jurisdiction. *See Hafter D.O.*, 190 F.3d at 1160 ("If jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence."); *Ball v. Mayfield*, 566 F. App'x 765, 769 (10th Cir. 2014) (explaining that plaintiffs failed to carry their burden to show that *Rooker-Feldman* didn't bar their claims). So, the state-court protection-order proceedings were final for *Rooker-Feldman* purposes when plaintiff filed this case. *See D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013) (explaining that proceedings are "final" for purposes of *Rooker-Feldman* after the state-court proceedings—including appeals—have ended).

      *Fourth*, plaintiff's claims ask the court to review and reject the state-court judgment. "*Rooker-Feldman* bars federal suits when 'the injury complained of was caused by the state court judgment,' or 'the relief sought in the federal action would reverse or undo the relief granted by the state court.'" *Viegas v. Kane*, No. 24-1368, 2025 WL 2089402, at *2 (10th Cir. July 25, 2025) (first quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1284 (10th Cir. 2012); and then quoting *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1237 (10th Cir. 2006)). Plaintiff's Complaint alleges that Judge Reynolds "unlawfully extended a protection order . . . despite lack of service and Plaintiff's absence." Doc. 77 at 3 (Second Am. Compl. ¶ 24). And it further alleges that Judge Reynolds imposed "procedural unfairness" when she denied plaintiff's request for a protection order. *Id.* (Second Am. Compl. ¶ 26).

---

affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *Hafter D.O.*, 190 F.3d at 1160 n.5. Plaintiff's unadorned allusion to an appeal doesn't qualify as "affidavits or other evidence sufficient to" convince the court that its jurisdiction is proper. *Id.*

Both of plaintiff's claims based on these state-court proceedings—abuse of process and procedural due process—fall within *Rooker-Feldman*'s scope. They "'complain[] of injuries *caused* by state-court judgments.'" *K.A. v. Barnes*, 134 F.4th 1067, 1074 (10th Cir. 2025) (emphasis in original) (quoting *Campbell*, 682 F.3d at 1283). And for plaintiff to succeed on either of his claims here, the court "would necessarily have to review and reject" the state-court judgments. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1194 (10th Cir. 2010). Plaintiff's constitutional gloss doesn't change this conclusion. "Attempts to recast state court losses as deprivations of constitutional rights do not overcome the *Rooker-Feldman* jurisdictional bar." *Bruce*, 57 F.4th at 749.

What's more, our Circuit expressly has applied *Rooker-Feldman* to the sort of process-based injuries that plaintiff alleges. "A plaintiff cannot circumvent *Rooker-Feldman* by framing his or her challenge to a state-court judgment as a due process claim." *Millard v. Camper*, 971 F.3d 1174, 1186 (10th Cir. 2020); *see also Sorak v. Cisneros*, No. 24-1170, 2024 WL 4965947, at *2 (10th Cir. Dec. 4, 2024) (rejecting argument that "injuries came not from the state-court judgment itself but from the allegedly unconstitutional processes that produced it" because plaintiff's "claims would evaporate if there was no state-court judgment against him"). Plaintiff's abuse-of-process and "procedural due process claim[s] [are], at [their] core, that the state court misapplied" state law. *Millard*, 971 F.3d at 1186. That means this court can't "grant[] relief without reexamining the state-court judgment[]." *Id.* So, *Rooker-Feldman* applies. And it deprives the court of subject matter jurisdiction to hear plaintiff's claims based on the allegedly faulty procedures used in state court. *See id.*

The court thus grants Judge Reynolds's Motion to Dismiss (Doc. 108), dismissing plaintiff's claims predicated on the allegedly unlawful stalking-protection order entered by the

state court.[18]  The court lacks subject matter jurisdiction to hear these claims.  This dismissal is without prejudice.  Claims predicated on this state-court judgment are the only ones that plaintiff asserts against Judge Reynolds, so the court dismisses her from this action.[19]  And the court needn't consider Judge Reynolds's alternative arguments about the domestic-relations exception or judicial immunity.

Next, the court addresses Osage County and Coffey County's Motion to Dismiss (Doc. 90).

### D. Osage County and Coffey County

Osage County and Coffey County have filed a Motion to Dismiss (Doc. 90).[20]  Their motion argues that the court lacks jurisdiction under *Rooker-Feldman*; that plaintiff has failed to

---

[18]     In an unpublished case, our Circuit has suggested that claims for money damages don't trigger *Rooker-Feldman*.  *See Cowan v. Hunter*, 762 F. App'x 521, 524 (10th Cir. 2019) ("An award of money damages would presumably conflict with the judgment of conviction.  But inconsistency with that judgment implicates preclusion rather than the Rooker-Feldman doctrine.  So the claim for money damages doesn't trigger the Rooker-Feldman doctrine." (internal citation omitted)).  But this decision is out of step with our Circuit's published authority.  *E.g.*, *Jensen*, 603 F.3d at 1194 (holding *Rooker-Feldman* barred malicious-prosecution claims for damages where "a lower federal court would necessarily have to review and reject those [state-court] judgments in order for [plaintiffs] to succeed"); *Mann v. Boatright*, 477 F.3d 1140, 1147 (10th Cir. 2007) (concluding *Rooker-Feldman* applies to claims seeking monetary relief where such claims "would require the district court to review and reject [state-court] judgments"); *Bruce*, 57 F.4th at 749–50 (applying *Rooker-Feldman* to claims for damages where plaintiff's "alleged injuries arose from, and are inseparable from, the state court judgment"); *see also Schuckman v. Babin*, No. 23-cv-01214-HLT-BGS, 2025 WL 721947, at *5 & n.10 (D. Kan. Mar. 6, 2025) (acknowledging tension between *Cowan* and published Tenth Circuit authority and concluding that *Rooker-Feldman* applies to claims for monetary relief).  So, the court—as it must—abides our Circuit's binding, published cases.  The court thus dismisses plaintiff's claims predicated on the protection order regardless of the relief plaintiff seeks.

[19]     The Second Amended Complaint also accuses Judge Reynolds of sharing part in "judicial appointment networks[,]" which "undermin[ed] Plaintiff's right to a fair trial."  Doc. 77 at 4 (Second Am. Compl. ¶ 32).  But as the court already has discussed, the only proceeding referenced in the Second Amended Complaint is the protection-order action.  So the court's dismissal of claims predicated on the protection-order proceeding also takes care of this accusation about an unlawful judicial-appointment network.

[20]     The Osage County Sheriff's Department and the Coffey County Sheriff's Department jointly submitted this Motion to Dismiss (Doc. 90) with Osage County and Coffey County.  Doc. 90 at 1.  In light of plaintiff's voluntary dismissal of the sheriffs' departments, the portion of the motion seeking

name them properly as defendants; that plaintiff failed to serve them properly; and that the operative pleading fails to state a claim for relief against them.  Doc. 90 at 2.

The Second Amended Complaint doesn't allege any facts involving Osage County or Coffey County.  *See generally* Doc. 77.  Liberally construed, the Second Amended Complaint seems to aspire to entangle these defendants because they are located within the Fourth Judicial District of Kansas.  *See* Kansas Judicial Branch, *4th Judicial District*, https://kscourts.gov/About-the-Courts/District-Courts/Districts/4th-Judicial-District (last visited Sept. 26, 2025).  But—as already discussed—the court lacks jurisdiction over claims alleging constitutional violations arising from the protection-from-stalking proceedings under *Rooker-Feldman*.  So, to the extent the Second Amended Complaint asserts any claims against Osage County and Coffey County based on these proceedings, the court dismisses them under Rule 12(b)(1) for lack of subject matter jurisdiction.  Because the protection-order proceedings are the only facts alleged in the Second Amended Complaint that possibly involve Osage County or Coffey County, the court dismisses these defendants from this action without prejudice.[21]

**E.  Barber Emerson, L.C.**

Barber Emerson also has filed a Motion to Dismiss (Doc. 113).  The court grants this motion, finding that plaintiff hasn't stated a plausible claim for relief against this entity.

Recall that the only alleged fact involving this entity claims that Barber Emerson "billed Plaintiff during an active federal bankruptcy stay, violating 11 U.S.C. § 362."  Doc. 77 at 4

---

dismissal of the Osage County Sheriff's Department and the Coffey County Sheriff's Department is moot, and the court denies that portion of the motion.

[21]    Because the court lacks jurisdiction to hear the only claim that even possibly involves these county defendants, the court needn't consider their alternative arguments for dismissal.

(Second Am. Compl. ¶ 33).[22]  This naked statement is precisely the type of "the-defendant-unlawfully-harmed-me accusation" that is insufficient to survive a 12(b)(6) motion.  *Iqbal*, 556 U.S. at 678.  Relevant here, it is unlawful for a creditor to "collect, assess, or recover a claim against the debtor that arose before the commencement of the" bankruptcy proceedings.  11 U.S.C. § 362(a)(6).  Plaintiff never alleges which claim Barber Emerson attempted to collect from him, when that claim arose, or how that collection effort violated § 362.  He thus has failed to state a plausible claim for relief under that statute.  What's more, only a plaintiff "injured by a[] willful violation of a stay" may recover damages.  *Id.* § 362(k)(1).  Plaintiff hasn't alleged that Barber Emerson acted willfully.  Nor has he alleged how he suffered injury.  His claim thus fails to surmount the 12(b)(6) standard, and the court dismisses it.  *See McCollum v. Montgomery Cnty. Comm'r*, No. 21-cv-01049-HLT, 2021 WL 4952849, at *2 (D. Kan. July 26, 2021) (dismissing bankruptcy-stay claim where plaintiff alleged no facts supporting an inference that defendant "committed a willful violation of the automatic stay or caused a federal injury to

---

[22]     The Second Amended Complaint also asserts a few facts about a now-dismissed defendant, Bethany Roberts, who allegedly worked as an attorney at Barber Emerson.  *See* Doc. 77 at 2, 4 (Second Am. Compl. ¶¶ 9, 34–37).  He alleges that Ms. Roberts "filed a false report alleging Plaintiff visited her home repeatedly."  *Id.* at 4 (Second Am. Compl. ¶ 34).  And he says this report violated a Kansas statute criminalizing perjury and a Kansas Supreme Court Rule.  *Id.* (Second Am. Compl. ¶ 37).  But plaintiff never explained why Barber Emerson is liable for this conduct.  And even if he did, he hasn't alleged plausibly how he's entitled to recover under a Kansas criminal statute or a Kansas Supreme Court Rule.  So, these facts can't support a plausible claim against Barber Emerson.

Plaintiff").[23]  So, the court dismisses plaintiff's claims against Barber Emerson, L.C. without prejudice.[24]

## VIII.        Plaintiff's Other Motions (Doc. 146; Doc. 158; Doc. 162)

Plaintiff has filed three other procedural motions.  They ask for leave to file surreplies.  Doc. 146; Doc. 158; Doc. 162.  The court denies these motions.  "Our court's local rules limit briefing on motions to the motion (with memorandum in support), a response, and a reply." *Hampton v. Barclays Bank Del.*, 478 F. Supp. 3d 1113, 1142 (D. Kan. 2020) (citing D. Kan. Rule 7.1(a), (c)), *aff'd*, No. 20-3175, 2021 WL 3237082 (10th Cir. July 30, 2021).  "'Surreplies are not typically allowed.'"  *Id.* (quoting *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd*, 189 F. App'x 752 (10th Cir. 2006)).  Plaintiff hasn't explained why the court should permit him to file additional papers on defendants' Motions to Dismiss—especially when plaintiff didn't submit timely responses in the first place.  The court thus denies plaintiff's Motions for Leave to File Surreplies (Doc. 146; Doc. 158; Doc. 162).[25]

---

[23]     Plaintiff alleges additional facts about this claim in a filing docketed as Supplement to Memorandum in Opposition (Doc. 123).  The court declines to consider these allegations because plaintiff didn't include them in the Second Amended Complaint.  And plaintiff submitted this filing more than 21 days after Barber Emerson filed its Motion to Dismiss.  *See* Doc. 113 (docketed on August 7, 2025); Doc. 123 (docketed on September 2, 2025).  The court thus declines to consider this filing because it wasn't submitted as a timely response to Barber Emerson's Motion to Dismiss.  *See* D. Kan. Rule 6.1(d)(1) (responses to dispositive motions are due 21 days after motion is served).

[24]     The Second Amended Complaint lists Barber Emerson as a defendant on plaintiff's due-process claim.  Doc. 77 at 5 (Second Am. Compl. § IV).  But plaintiff hasn't alleged any facts to support this claim.  So, no viable claims against Barber Emerson survive this Order.

[25]     Plaintiff never moved for leave to consider his untimely briefs submitted in response to defendants' Motions to Dismiss.  *See* Doc. 121; Doc. 122; Doc. 123; Doc. 124 (all submitted more than 21 days after defendants submitted the last of their Motions to Dismiss); D. Kan. Rule 6.1(d)(1) (responses to dispositive motions are due 21 days after motion is served).  The court declines to consider these untimely filings.  Plaintiff's requests for leave to file surreplies don't address his untimely responses.  *See generally* Doc. 146; Doc. 158; Doc. 162.  And even if they did, the court would deny them because plaintiff hasn't shown good cause for his late submissions.

IX.        **Plaintiff's Plethora of Other Filings**

Before concluding, the court briefly addresses a series of filings plaintiff has placed on this case's docket. Plaintiff continually has placed filing he titles "Notices" on the docket. *See* Doc. 16; Doc. 19; Doc. 26; Doc. 49; Doc. 118; Doc. 147; Doc. 154; Doc. 157; Doc. 164; Doc. 165; Doc. 166; Doc. 170. They're not motions; they don't ask for any relief. These filings largely purport to give notice to our court of procedural issues arising in Kansas state court. *E.g.*, Doc. 16 at 1 (alleging "witness intimidation and extrajudicial interference" in state-court proceedings); Doc. 49 at 1 (same); Doc. 118 at 6–7 (alleging improper ex parte communication in state-court proceedings). The allegations in these notices are neither here nor there. Plaintiff hasn't included these allegations in his operative pleading, so they don't affect the court's motion-to-dismiss analysis or conclusions. Plus, the law "is settled that the federal courts have no supervisory jurisdiction over state courts and do not direct the courts or their officers in the performance of their duties." *Payton v. Kansas*, No. 17-3049-SAC-DJW, 2017 WL 6502766, at *1 (D. Kan. Apr. 21, 2017) (citing *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986)).

Some of plaintiff's "Notices" ask the court to take judicial notice of alleged constitutional violations in Kansas courts. *E.g.*, Doc. 118 at 6; Doc. 164 at 1. But plaintiff hasn't supplied any "source[s] whose accuracy cannot reasonably be questioned" to support the facts he alleges. Fed. R. Evid. 201(b)(2). So, the court declines to take judicial notice of them. Finally, the court borrows—and reiterates—Magistrate Judge Schwartz's message to plaintiff: Stop filing these documents. *See* Doc. 169 at 5 n.3. They aren't proper, and the court likely will strike any similar "Notices" plaintiff may file in the future.

## X.        Next Step

Two defendants remain in this case—Ty Wheeler and Brian Henderson.  The court has substantial concerns about the viability of plaintiff's claims against these defendants.  Two things sponsor these reservations.

*First*, as discussed above, plaintiff hasn't served these defendants properly.  And more than 90 days have passed since plaintiff filed his operative pleading.  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

And *second*, plaintiff's sole allegation against these two defendants comes up far short of Rule 8's standard.  The Second Amended Complaint devoted just two paragraphs to these two remaining defendants:

- "Defendants Ty Wheeler and Brian Henderson improperly served protection order petitions to incorrect addresses—412 W. 4th Street and an Arapahoe Street address in Olathe—neither of which was Plaintiff's legal residence."  Doc. 77 at 3 (Second Am. Compl. ¶ 22).

- "These actions violated K.S.A. 60-603, the Fourteenth Amendment, and Supreme Court precedent (Mullane v. Central Hanover Bank, 339 U.S. 306 (1950); Peralta v. Heights Medical Center, 485 U.S. 80 (1988))."  *Id.* (Second Am. Compl. ¶ 23).

Under Rule 8 of the Federal Rules of Civil Procedure, "a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  Plaintiff's allegations fall far short of this standard.  For instance, plaintiff never explains when these defendants allegedly violated plaintiff's rights.  Nor does plaintiff ever explain how he suffered

injury from this purportedly defective service or why he "is entitled to relief." Fed. R. Civ. P. 8(a)(2).

**Given these concerns, the court orders plaintiff to show cause in writing within 14 days of this Order why the court shouldn't dismiss any claims against defendants Ty Wheeler and Brian Henderson for failure to comply with Rule 4(m) and Rule 8 of the Federal Rules of Civil Procedure.**

## XI.    Conclusion

The court denies plaintiff's motions for preliminary relief and for entries of default and default judgment. They are moot or plaintiff has failed to show that he's entitled to the relief he seeks.

Plaintiff's voluntary dismissals left just seven defendants in this case: Coffey County, Osage County, the Fourth Judicial District, Judge Kara Reynolds, Barber Emerson, Ty Wheeler, and Brian Henderson. The court dismisses the Fourth Judicial District because it's entitled to Eleventh Amendment immunity, which deprives the court of subject matter jurisdiction. The court dismisses Coffey County, Osage County, and Judge Reynolds because the *Rooker-Feldman* doctrine bars the court's subject matter jurisdiction over the claims asserted against these defendants. Plaintiff also has alleged no facts about Coffey County or Osage County. And the court dismisses the claim against Barber Emerson under Rule 12(b)(6) because the Second Amended Complaint fails to set forth sufficient facts to make that claim plausible. These dismissals are all without prejudice.[26]

---

[26]    The court's 12(b)(1) and 12(b)(6) dismissals both are without prejudice. *See Brereton*, 434 F.3d at 1216 (instructing that dismissals for lack of jurisdiction "must be without prejudice"); *Gee*, 627 F.3d at 1186 ("[O]rdinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]").

Ty Wheeler and Brian Henderson are the only defendants who remain. The court directs the Clerk to terminate all other defendants. And plaintiff must show cause why the court shouldn't dismiss these two defendants, too.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Jeremy Foster's Motion for Preliminary Injunction (Doc. 11) is denied.

**IT IS FURTHER ORDERED THAT** plaintiff Jeremy Foster's Motions for Default Judgment (Doc. 44; Doc. 51; Doc. 52; Doc. 55; Doc. 119-2; Doc. 120-2) are denied.

**IT IS FURTHER ORDERED THAT** the Clerk treat plaintiff's Motions to Dismiss (Doc. 93; Doc. 94; Doc. 95; Doc. 96; Doc. 116; Doc. 117) as Notices of Dismissal. Defendants Kelsey Winski, Bethany Roberts, City of Burlington, Coffey County Sheriff's Department, Osage County Sheriff's Department, Samantha Foster, Tonya Vignery, and Janet Walsh are dismissed without prejudice.

**IT IS FURTHER ORDERED THAT** plaintiff Jeremy Foster's Applications for Entry of Default (Doc. 43; Doc. 54; Doc. 73; Doc. 119; Doc. 120) are denied.

**IT IS FURTHER ORDERED THAT** defendant City of Burlington, Kansas's Motion to Dismiss (Doc. 79) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendant Judge Taylor Wine's Motion to Dismiss (Doc. 84) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendants' Bethany Roberts and Janet Walsh's Motion to Dismiss (Doc. 91) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendants Samantha Foster and Tonya Vignery's Motion to Dismiss (Doc. 115) is denied as moot.

**IT IS FURTHER ORDERED THAT** defendant Fourth Judicial District Court of Kansas's Motion to Dismiss (Doc. 86) is granted.

**IT IS FURTHER ORDERED THAT** defendants Coffey County Sheriff's Department; Coffey County, Kansas; Osage County Sheriff's Department; and Osage County's Motion to Dismiss (Doc. 90) is granted in part and denied in part as moot.

**IT IS FURTHER ORDERED THAT** defendant Judge Kara Reynolds's Motion to Dismiss (Doc. 108) is granted.

**IT IS FURTHER ORDERED THAT** defendant Barber Emerson, L.C.'s Motion to Dismiss (Doc. 113) is granted.

**IT IS FURTHER ORDERED THAT** plaintiff Jeremy Foster's Motions for Leave to file Surreplies (Doc. 146; Doc. 158; Doc. 162) are denied.

**IT IS FURTHER ORDERED THAT** plaintiff Jeremy Foster show cause in writing within 14 days of this Order why the court shouldn't dismiss any claims against defendants Ty Wheeler and Brian Henderson for failure to comply with Rule 4(m) and Rule 8 of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED THAT** Doc. 170 is stricken from the record.

**IT IS SO ORDERED.**

**Dated this 30th day of October 2025, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

31